1  JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
2  SARVENAZ "NAZY" J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
3  KELSEY L. CAMPBELL (SBN 324015)
kcampbell@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
5  840 Malcolm Road
Burlingame, CA 94010
6  Telephone: (650) 697-6000
Facsimile: (650) 697-0577
7
*Attorneys for Plaintiff*
8

9  **UNITED STATES DISTRICT COURT**

10  **NORTHERN DISTRICT OF CALIFORNIA**

11  **BABAK MALEK**, individually and on behalf of all similarly situated individuals,

12  Plaintiff,

13  v.

14  **TESLA, INC.**, a Delaware corporation,

15  Defendant.

CASE NO.

**CLASS ACTION COMPLAINT FOR:**

1. **Violations of Truth in Lending Act (TILA) (15 U.S.C. § 1601 et seq.);**

2. **Breach of Contract;**

3. **Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200);**

4. **Violation of California's Consumer Legal Remedies Act (Cal. Civil Code § 1750); and**

5. **Violation of California's Contractors State License Law (Cal. Bus. & Prof. Code § 7160).**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENT

**Page No.**

I.    INTRODUCTION ......................................................................................................... 1

II.   PARTIES ...................................................................................................................... 2

III.  JURISDICTION AND VENUE ................................................................................... 2

IV.  COMMON FACTUAL ALLEGATIONS ..................................................................... 3

     A.    Tesla Acquires Struggling SolarCity in 2016 ............................................. 3

     B.    Tesla's Solar Roof ...................................................................................... 4

     C.    The Solar Roof Purchasing Process ............................................................ 5

     D.    Tesla's Bait and Switch Scheme with the Solar Roof ................................. 6

V.   FACTS SPECIFIC TO PLAINTIFF AND TYPICAL OF THE CLASS ........................ 7

     A.    Plaintiff Contracts for the Solar Roof ......................................................... 7

     B.    Tesla Inextricably Increases the Price of the Solar Roof ............................. 8

     C.    Plaintiff Opted Out of Agreement to Arbitrate ........................................... 9

VI.  CLASS ALLEGATIONS ............................................................................................ 10

VII. CAUSES OF ACTION ............................................................................................... 12

     FIRST CAUSE OF ACTION
     Violations of Truth in Lending Act (TILA)
     15 U.S.C. § 1601 et seq.
     (On behalf of Plaintiff and Subclass).......................................................... 12

     SECOND CAUSE OF ACTION
     Breach of Contract
     (On behalf of Plaintiff and the Class) ......................................................... 13

     THIRD CAUSE OF ACTION
     Unfair, Unlawful, and Deceptive Business Acts and/or Practices in Violation of
     California's Unfair Competition Law
     Cal. Bus. & Prof. Code §§ 17200, et seq.
     (On behalf of Plaintiff and the Class) ......................................................... 14

     FOURTH CAUSE OF ACTION
     Unfair or Deceptive Acts or Practices in Violation of
     California's Consumer Legal Remedies Act
     Cal. Civ. Code §§ 1750, et seq.
     (On behalf of Plaintiff and the Class) ......................................................... 15

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

FIFTH CAUSE OF ACTION
Unfair, Unlawful, and Deceptive Business Acts and/or Practices in Violation of
California's Contractors State License Law
Cal. Bus. & Prof. Code § 7160
(On behalf of Plaintiff and the Class) ...................................................................... 17

VIII.    PRAYER FOR RELIEF ........................................................................................ 18

IX.      JURY DEMAND.................................................................................................... 18

Plaintiff Babak Malek, by and through his attorneys, on behalf of himself and all others similarly situated, based upon personal knowledge with respect to his own circumstances and based on information and belief and/or the investigation of his counsel as to all other allegations, alleges the following against defendant Tesla, Inc. ("Defendant" or "Tesla").

## I.    INTRODUCTION

1.    Tesla is best known as the manufacturer and seller of electric vehicles.  However, recently, Tesla began marketing and selling a new integrated solar roofing technology called the Solar Roof for residential homes.  Rather than install traditional solar panels onto a roof, the Solar Roof incorporates photovoltaic (PV) solar cells into individual shingles, making the Solar Roof's appearance similar to a traditional roof and thus more aesthetically pleasing.  Elon Musk, CEO of Tesla, has touted that the Solar Roof is more durable than traditional roofs and is a more affordable energy source for homeowners.

2.    Tesla introduced the Solar Roof to the market in 2016 after acquiring SolarCity, and it appears that it did so far too soon.  The technology's performance has been suboptimal and sales have lagged.  CEO Musk has admitted that with the first two production lines of the roof, Tesla was "still sort of figuring things out."  In late 2019, Tesla released Version 3 of the Solar Roof.  This newest version has promised several improvements, lower costs, and faster installation due to larger tiles and Tesla opening up installation to traditional roofing companies.  Tesla advertised that it aimed to install a Solar Roof in less time than a traditional roof can be installed.  Musk bragged that Version 3 "is a killer product."

3.    Consumers who sought the Solar Roof for their residences, including Plaintiff and the Class, pre-ordered the product, agreed to a total project cost, paid a deposit, and prepared their properties for installation.  Some consumers arranged for loans or financing based on project cost.

4.    However, after finalizing the purchase and installation agreements with customers, Tesla has raised the product's price inexplicably.  Tesla unilaterally changed the terms of the parties' purchase agreements, as much as a 100% increase for many customers, amounting to thousands of dollars in unanticipated costs.

**CLASS ACTION COMPLAINT**                                                              1

5. Several of the pricing details provided to customers have included notations for "Federal Tax Credits," in the tens of thousands of dollars. In November 2020, Tesla encouraged consumers to place orders for solar systems, as the tax credit would be reduced for 2021. However, it is unclear that customers would receive the 2020 credit, as many are still waiting for their roofs to be installed.

6. With each price increase, customers are told their installation will commence within one week to six months from the date of signing of the contract. Many customers have waited months before being presented with a new, more expensive contract, thereby starting a new clock for their installation timeline.

7. Tesla's actions are a classic bait and switch scheme. Tesla has lured in consumers with promises of affordable residential solar energy and now seeks to hold its customers hostage with unanticipated and unjustified additional project costs. If customers want to move forward with the Solar Roof installation in which they have already invested considerable time and money, they will have to pay above and beyond the price they originally agreed to, and no alternative product currently exists on the market.

8. This lawsuit is intended to hold Tesla accountable for its deceptive, unlawful, and unjust conduct.

## II. PARTIES

9. Plaintiff Babak Malek is a natural person and a citizen of the State of California. Plaintiff owns and resides in a house in West Hills, Los Angeles County.

10. Defendant Tesla, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located at 3500 Deer Creek Road, Palo Alto, California 94304.

## III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2), because (i) at last one member of the Class is a citizen of a different state than Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

12.     This Court also has jurisdiction for the Fifth Cause of Action pursuant to the Truth in Lending Act, 15 U.S.C. § 1640(e).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California and is headquartered in California and this District.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant maintains its headquarters and conducts significant business in this District.

## IV.     COMMON FACTUAL ALLEGATIONS

### A.     Tesla Acquires Struggling SolarCity in 2016

15.     SolarCity was founded by Lyndon Rive and Peter Rive, cousins of Tesla CEO Elon Musk.  Musk served as the chairman of SolarCity's board and was the company's largest shareholder. In 2016, Musk orchestrated a purchase of SolarCity by Tesla for over $2 billion—at a time when Tesla was struggling financially and SolarCity was on the verge of insolvency.  Some have alleged that Musk bailed out SolarCity to protect his own investment.

16.     Musk is currently defending against allegations by investors and pension funds that he breached his fiduciary duty by agreeing to the buyout of the struggling solar company while having financial interest in both companies.

17.     Musk has argued that the merger was aimed at combining Tesla's battery business with SolarCity's energy generation.

18.     In September 2016, Musk began hyping Tesla's Solar Roof technology.  *See* Figure 1.



**(Figure 1)**

19.     In October 2016, Musk dramatically unveiled prototypes of Tesla's Solar Roof with a 'neighborhood' display on the Universal Studios lot in Los Angeles.  At the time of the announcement, Musk said he expected Tesla would start installing roofs by summer 2017.  Tesla began accepting $1,000 deposit for the roofs.  Purportedly, by spring 2018, only twelve homes, all in Northern California, had the Solar Roof installed and connected to the grid.  At a shareholder meeting in mid-2018, Musk blamed ongoing delays on a need for more testing.

**B.     Tesla's Solar Roof**

20.     Tesla promotes its Solar Roof system uniformly as a product of the future to all consumers.

21.     Tesla uniformly advertises the Solar Roof's beautiful design.  *See* <u>Figure 2</u>.  Unlike traditional solar panels that are affixed on top of a typical roof, the Solar Roof integrates solar technology into the roof tiles.

22.     Tesla uniformly touts on its website:  "Solar Roof is the only roof that can help pay for itself with the energy you produce.  Power your home at the lowest price per watt of any national provider and take control of your monthly electricity bill."

23.     Tesla uniformly hypes its trusted expertise:  "Our in-house team of energy professionals has installed more than 3.6 GW of clean solar energy across 400,000 roofs—the equivalent of 10 million traditional solar panels.  *From design to power on, we take care of everything*."



**(Figure 2)**

24.     Tesla uniformly advertises considerable consumer interest in its Solar Roof, particularly with customers building or remodeling a home across the country.

**C.     The Solar Roof Purchasing Process**

25.     Customers initiate the purchasing process through Tesla's website by providing their installation address and current electrical usage.

26.     Purchasing the Solar Roof is a uniform, multi-step process.

    a.   First, Tesla provides consumers with any early quote for the estimated price for the project which includes the price of the Solar Roof (per estimated square foot) and standard installation costs.

    b.   Second, after Tesla investigates the customer's unique project needs, Tesla offers a contract price which includes the price of Solar Roof (based on custom square foot measurements), standard installation costs, and the customer's specific pre-construction needs.

27.     After the early quote is provided, Tesla asks potential customers to place a pre-order by paying a deposit.  Tesla intentionally advertises a lower estimated price at this early phase than what the company reasonably expects customers to pay on the final project in order to lure customers into making a deposit and initiating the project.

28.     In the second step, Tesla personnel review satellite images of a customer's roof and develop a schematic of the solar installation.  Thereafter, Tesla personnel conduct a site visit and inspect the customer's roof in-person.

29.     According to Tesla's advertisements, the purpose of the second step is to identify any anomalies or unique shapes on a customer's roof and to recommend an appropriate size of the solar array.  Tesla conducts an in-person inspection as to verify that the design created from satellite imagery is appropriate.  The inspection is also intended to confirm whether any roof or site repairs are required.

30.     Customers finalize their purchase by signing a Solar Roof Purchase & Home Improvement Agreement.  The Purchase Agreement outlines the customer's project specifications (square feet of coverage, kilowatts (kW)) and a contract cost based on those specifications.

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

31.     Customers all rely on Tesla's representations that the review phase enables Tesla to determine the appropriate size and scope of the project and to identify any anomalies in the project size which may affect the project's total cost.  Because Tesla has had the opportunity to conduct in-person inspections, customers reasonably rely on the contract price to be the final or nearly final price for their Solar Roof project.

**D.     Tesla's Bait and Switch Scheme with the Solar Roof**

32.     On or around April 10, 2021, Tesla sent customers who pre-ordered a Tesla Solar Roof an email indicating that the company had increased the Solar Roof prices and would no longer honor the customers' contracts.  The email stated:

> We have increased the price of Solar Roof and have added adjustments for individual roof complexity.
>
> You will receive an email in the next 1-2 days when your new agreement is ready for your review and acceptance before moving forward.  If you are no longer interested in moving forward with Solar Roof, you can cancel your order by logging into your Tesla Account, and your deposit will automatically be refunded.
>
> We will be prioritizing customers based on the order in which they accept their updated agreements.

33.     Customers who received the April 10, 2021 email had already signed a contract and agreed to a final price.  Many of these customers had already been waiting months for installation of the Solar Roof on their residences.

34.     In order to prepare for installation, many customers made alterations to their property, including trimming trees to reduce shade on the roof, making reinforcements to their roof structure to accommodate the weight of the Solar Roof tiles, and working with their utility provider to convert their power meters.  Customers also made arrangements for loans and/or financing based on the contract price.

35.     Tesla's price increase notice imposed significant and material changes to the existing project costs.

36.     One customer's contract price for a Solar Roof and battery increased by 114%.  Customers were informed that they could cancel their order through the online portal but found that no such function existed.  Customers have struggled in connecting with Tesla customers

service, often having their emails go unanswered for weeks on end.  One Tesla customer is noted as saying, "It's painful to move on, but the customer service/sales process was really painful even before this change."  (*See* attached Exhibit A.)

37.     For some customers, the price increase notice came just days or weeks before installation was set to commence.  After the notice, customers either had to:  (1) pay Tesla the unexplained price hike, or (2) cancel their project, losing the significant time and money they had spent in preparation.

38.     Tesla's price hike email also included the implication that the company would delay installation if the customer did not accept the new terms right away.  Many customers had already waited months for installation, and Tesla's terse email inferred that customers should expect further delay if they did not readily accept Tesla's unilateral terms.

39.     Tesla does not currently have real competition for this type of integrated solar roofing technology.  Tesla is exploiting customers who lack alternatives, through price hikes, project delays, and overall bad customer service.

40.     Plaintiff and Class seek to enforce their contracts with Tesla for their previously agreed-upon price of the Solar Roof installation.

## V.     FACTS SPECIFIC TO PLAINTIFF AND TYPICAL OF THE CLASS

### A.     Plaintiff Contracts for the Solar Roof

41.     At the recommendation of his sister, who was a Tesla customer, Plaintiff Babak Malek signed a contract with Tesla for the purchase and installation of a solar roof system for his residence in West Hills, California in November 2020.  *See* Figure 3.  Plaintiff Malek put down $100 to secure the project.

42.     After Tesla completed a more thorough design, Plaintiff Malek signed an adjusted contract on January 23, 2021.  The contract price for his 18.48 kW solar roof system, covering 3615.409 square feet, was $64,735.  The contract provided that Plaintiff Malek could cancel the contact within five business days of January 24, 2021.  Plaintiff Malek did not exercise this option.



**(Figure 3)**

43.     The adjusted contract stated that installation would commence between one week and six months from January 23, 2021.  In March 2021, two technicians representing Tesla inspected Plaintiff Malek's roof and told him that installation would begin within weeks.

44.     In April 2021, Plaintiff Malek's project was designated as in the "permitting" stage on the Tesla website.  Plaintiff Malek has been waiting patiently for installation of his solar roof ever since.

**B.      Tesla Inextricably Increases the Price of the Solar Roof**

45.     On April 10, 2021, along with other Tesla customers, Plaintiff Malek received an email from Tesla requiring that he approve and sign a new contract.  *See* Figure 4.  On the Tesla website, Plaintiff Malek's new contract showed his total cost as $91,400—*an increase of 50% above his January 2021 contract price*.  The website showed Plaintiff Malek's project as back to the "review and accept design" stage.

46.     Plaintiff Malek made several attempts to contact project advisors at Tesla to no avail. He finally was able to make contact with one advisor, who gave no explanation for the change in the

On Saturday, April 10, 2021, 11:38 AM, EnergyOrder
<energyorder@tesla.com> wrote:

Hi Babak Malek,

We have increased the price of Solar Roof and have added
adjustments for individual roof complexity.  Learn More

You will receive an email in the next 1-2 days when your new
agreement is ready for your review and acceptance before moving
forward. If you are no longer interested in moving forward with
Solar Roof, you can cancel your order by logging into your Tesla
Account and your deposit will automatically be refunded.

We will be prioritizing customers based on the order in which they
accept their updated agreements.

Best Regards,

T E S L A

**(Figure 4)**

contract price other than "corporate decision."  Since first contacting Tesla in November 2020 for construction of a solar roof, Tesla has changed advisors on Plaintiff Malek's project five (5) times, further causing delays and breakdown in communications.

47.     Plaintiff Malek sent several email inquiries to Tesla to follow up on his contract. Upon reading several news articles in spring 2021, Plaintiff Malek discovered that the sudden increase in price and delays in installation was happening to all other existing customers.

48.     On June 25, 2021, Tesla provided yet another amended sales contract.  This contract, for the same roof and kilowatt output had *increased several thousand dollars, to $95,107.*  As with prior contracts, this contract stated that installation would begin in approximately one week to six months from contract signing, providing no acknowledgment that Plaintiff Malek had already been waiting several months for installation.

49.     Because of the price increase, Plaintiff Malek decided to finance part of the purchase directly with Tesla.

**C.     Plaintiff Opted Out of Agreement to Arbitrate**

50.     On June 29, 2021, Plaintiff Malek exercised his option under section 17 of the latest contract to opt out of the agreement to arbitrate any disputes between himself and Defendant Tesla.

51.     In preparation for installation, Plaintiff Malek expended time and financial resources clearing the area around his house, to include the destruction and removal of a small structure.

**CLASS ACTION COMPLAINT**                                                                          9

52.     In July 2021, Tesla notified Plaintiff Malek that his utility provider was limiting the size of his solar roof to no more than 16.25 kilowatts.  Based on this decreased output, Tesla was amending the total price to $90,367.44—still much higher than the January 2021 contract price.

53.     Plaintiff's residence is considered average in shape/size for his community.  Despite the typicality of his residence, Defendant Tesla has changed the price and timeline of installation several times.  Given his energy consumption, Plaintiff would greatly benefit from a clean energy source, such as the Solar Roof.  However, despite all of Plaintiff's efforts, he still does not have the Solar Roof installed on his residence.

## VI.    CLASS ALLEGATIONS

54.     **Class Definition**:  Plaintiff Babak Malek brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> **Nationwide Class**: All individuals in the United States with whom Tesla entered into a standard contract for the purchase and/or installation of a Solar Roof and/or Powerwall energy storage system in the United States and whom Tesla has uniformly notified, on or after April 1, 2021, must pay an increased price as a condition for performance.

55.     Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information and reserve the right to establish sub-classes where appropriate.

56.     The Class excludes:  (1) any Judge or Magistrate presiding over this action and the members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter has been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

57.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable.  The Class likely

consists of thousands of individuals.  Members of the Class can be easily identified through Defendant's records.

58.     **Commonality and Predominance**:  There are many questions of law and fact common to claims of Plaintiff and the other members of the Class, and those questions predominate over all questions that may affect individual members of the Class.  Common questions for the Class include but are not limited to the following:

    a.   Whether Defendant violated 15 U.S.C. § 1601;

    b.   Whether Defendant breached its contract;

    c.   Whether Defendant violated Cal. Bus. & Prof. Code § 17200, et seq.;

    d.   Whether Defendant violated Cal. Civ. Code §§ 1750, et seq.; and

    e.   Whether Defendant violated Cal. Bus. & Prof. Code § 7160.

59.     **Typicality**:  Plaintiff's claims are typical of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

60.     **Adequate Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions.  Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

61.     **Class Action Warranted**:  This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole.  The interest of members within the Class in individually controlling the prosecution of separate actions is not practical. The Class has a high degree of similarity and cohesiveness, and Plaintiff anticipate no difficulty in the management of this matter as a class action.

//

//

//

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

## VII.   CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Violations of Truth in Lending Act (TILA)**
**15 U.S.C. § 1601 et seq.**
**(On behalf of Plaintiff and Subclass)**

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     This cause of action is brought on behalf of Plaintiff and a Subclass of individuals who have financed part of or all of their purchase for the Solar Roof through Tesla.

64.     At all relevant times herein, Tesla was engaged in a business that included providing financing for the purchase of Tesla products and services.

65.     Plaintiff and Subclass are informed and believe, and based on that information and belief allege, that Tesla regularly extends, offers to extend, or arranges for the extension of credit, or does other acts that make Tesla a "creditor" pursuant to Section 1601 of the Federal Truth in Lending Act (15 U.S.C. § 1601).

66.     In the ordinary course and conduct of their business as previously described, Tesla regularly extends, and for some time has regularly extended "consumer credit" as defined at 12 C.F.R. § 1026.2.

67.     Tesla in the ordinary course of business as previously described, and in connection with "credit sales," as is defined at 12 C.F.R. § 1026.2 (Regulation Z), caused and is now causing customers, including Plaintiff and Subclass, to enter into written contracts for the purchase of Defendant Tesla's financing for the purchase of Tesla products and services.  In these contracts, Tesla has provided none of the consumer credit cost information and other disclosures required by 12 C.F.R. § 1026.  Tesla does not provide these customers with any consumer credit cost information.

68.     Plaintiff is a natural person and the property and services to be provided pursuant to the Loan were provided for personal, family, and household use.  More specifically, the Loan was rendered in connection with Plaintiff's principal dwelling.

69.     By and through the use of Tesla's financing, Tesla failed to make any material disclosures to Plaintiff and Subclass as required by the Federal Truth in Lending Act.

70.     Tesla's acts and practices as previously alleged herein are in violation of the Truth in Lending Act and constitute unfair and deceptive acts and practices.

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(On behalf of Plaintiff and the Class)**

71.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.     Plaintiff and the Class entered into valid contracts with Defendant for the purchase and installation of the Solar Roof and accompanying accessories.  Plaintiff and the Class agreed to a specific contract price for the purchase and installation, and in many cases, arranged financing based on the contract price.  Defendant agreed that the contract price would only change if additional costs arose with respect to repairs needed to install the Solar Roof.

73.     Plaintiff and Class paid a deposit to purchase the Solar Roof.  In reliance on Defendant honoring the contract price, Plaintiff and Class made alterations and accommodations on their properties and to their yards in anticipation of the installation.

74.     Defendant breached its contract with Plaintiff and the Class by increasing the price of the Solar Roof in violation of the contract.  Defendant also anticipatorily breached the contract by indicating in the Price Increase Notice that it would not perform its contractual obligation to install the Solar Roof unless and until Plaintiff and the Class accepted Defendant's unilateral adjustment to the contract's terms.

75.     Plaintiff and the Class are now damaged as a result of Defendant's breach and anticipatory breach.  In order to mitigate their losses, Plaintiff and the Class will be forced to pay for the price increase.

76.     Because no comparable products to the Solar Roof currently exist, there is no adequate remedy for Plaintiff and the Class under the law.  As such, Plaintiff and the Class seek specific performance under the last-agreed-upon Solar Roof Purchase Agreement that existed prior to the Price Increase Notice.

//

//

//

**THIRD CAUSE OF ACTION**
**Unfair, Unlawful, and Deceptive Business Acts and/or Practices in Violation of**
**California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On behalf of Plaintiff and the Class)**

77.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

79.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact.  A business practice need only meet one of the three criteria (unlawful, unfair, or fraudulent) to be considered a violation of the statute.

80.     Defendant's business practices are unlawful because, as detailed below, they constitute numerous violations of the CLRA, Cal. Bus. & Prof. Code § 7160, and as described above, TILA.

81.     Defendant's business practices are fraudulent because their representations about the cost of the Solar Roof were likely to deceive the general public and because Defendant falsely represented its services had characteristics or were of a particular standard that they were not.  The price of a consumer product is a material term of a transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product; thus, any deception or fraud related to the price of a product is materially misleading.  Defendant's fraudulent business practices include advertising deceptively low price estimates, misrepresenting the impact that its design and review services would have on the final project cost, raising the price of the Solar Roof at the eleventh hour (and demanding a new price inconsistent with its previous representations), and misrepresenting the nature of its Price Increase Notices as unanticipated project costs.

82.     Defendant's business practices are also unfair.  A business act or practice is "unfair" under the UCL if the reasons, justifications, or motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victim.  A business act or practice is also "unfair" under the UCL if the conduct or practice is immoral, unethical, oppressive, unscrupulous, or substantially

1  injuries to consumers. Defendant has engaged in unfair business practices by abandoning Sola Roof

2  projects where the customer refused to agree to Defendant's price hike(s). This conduct is unfair

3  because the injuries cause by it are not outweighed by any countervailing benefits to consumers or

4  competition, and the injury is one that consumers themselves could not reasonably have avoided.

5       83.    Defendant's fraudulent, unlawful, and unfair conduct directly and proximately caused

6  Plaintiff and the Class damages.

7                          **FOURTH CAUSE OF ACTION**
                  **Unfair or Deceptive Acts or Practices in Violation of**
8                    **California's Consumer Legal Remedies Act**
                            **Cal. Civ. Code §§ 1750, et seq.**
9                      **(On behalf of Plaintiff and the Class)**

10      84.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

11      85.    The California Consumer Legal Remedies Act ("CLRA") sets forth a list of prohibited

12  "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a

13  "consumer."

14      86.    The Legislature's intent in passing the CLRA is reflected in Section 1760, which

15  mandates that its terms are to be "liberally [c]onstrued and applied to promote its underlying

16  purposes, which are to protect consumers against unfair and deceptive business practices and to

17  provide efficient and economical procedures to secure such protection."

18      87.    Defendant Tesla's Solar Roof constitutes a "good" under Cal. Civ. Code § 1761(a) and

19  its design, review, and installation services constitute "services" under Cal. Civ. Code § 1761(b).

20      88.    Plaintiff Malek is a "consumer" under Cal. Civ. Code § 1761(d) and he has suffered

21  damage as a result of the use or employment by Defendant Tesla of the methods, acts, or practices set

22  forth below, which are unlawful under Cal. Civ. Code § 1770(a).

23      89.    Plaintiff Malek, on behalf of the general public, requests that the Court—to protect

24  and enforce important public rights and restrain conduct injurious to the general public—enter a

25  permanent injunction prohibiting Defendant Tesla, its agents, servants, employees, and all persons acting

26  in concern with it, from engaging in the following conduct with respect to the sale of the Solar Roof:

27

28

a. Representing that Defendant's pre-purchase and pre-installation review services have the use of benefit of detecting additional costs associated with the purchase of a Solar Roof, when they do not, in violation of Cal. Civ. Code § 1770(a)(5);

b. Advertising to the general public that the Solar Roof will cost a certain amount with the intent to charge consumers more than that advertised amount, in violation of Cal. Civ. Code § 1770(a)(9);

c. Representing that additional, unforeseen repair services are needed in order to install the Solar Roof, when they are not, in violation of Cal. Civ. Code § 1770(a)(15);

d. Representing that Defendant will only change the contract price if additional repairs or installation-related work is needed, when it intends to change the price of the Solar Roof product itself, in violation of Cal. Civ. Code § 1770(a)(7) & (16); and/or

e. Offering to enter into contractual relationships with the general public governed by unconscionable contract clauses, in violation of Cal. Civ. Code § 1770(a)(19).

90. Defendant knew, or should have known, that its representations and advertisements about the quality of its pre-purchase review services and the total cost of its Solar Roof contracts were false or misleading.

91. As a result of Defendant's unlawful conduct, Plaintiff suffered economic damages.

92. Plaintiff presently seeks injunctive relief. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of this notice of violations, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

93. Plaintiff further requests that the Court—to protect and enforce important public rights and prevent conduct injurious to the general public—enter a permanent injunction affirmatively compelling Defendant, its agents, servants, employees, and all persons acting in concert with it, to disseminate corrective advertising and/or other notice to the general public sufficient to accurately inform the general public about the true costs, terms, and characteristics of the Solar Roof.

94. Plaintiff also seeks an award of attorneys' fees pursuant to the private attorney general doctrine, codified at Cal. Civ. Proc. Code § 1021.5, for enforcing important rights "affecting the public interest."

**FIFTH CAUSE OF ACTION**
**Unfair, Unlawful, and Deceptive Business Acts and/or Practices in Violation of**
**California's Contractors State License Law**
**Cal. Bus. & Prof. Code § 7160**
**(On behalf of Plaintiff and the Class)**

95.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

96.     Plaintiff and the Class are a "Person" as defined by Cal. Bus. & Prof. Code § 7150.

97.     Defendant is a "solicitor" because it advertised, solicited, and induced Plaintiff and the Class to purchase a Solar Roof.

98.     Plaintiff and the Class entered into a Solar Roof Purchase Agreement with Defendant to purchase and install the Tesla Solar Roof and accompanying accessories.  The Solar Roof Purchase Agreement is an agreement to conduct home improvement work as it includes the installation of a new home improvement good and modernization of a roof on the Plaintiff's and the Class's properties.

99.     Defendant induced Plaintiff and the Class to enter into a Solar Purchase Agreement by advertising false price estimates and deceptive design and review services purportedly designed to control project costs.

100.    Defendant agreed to a contract price in writing with Plaintiff and Class and entered into the Solar Purchase Agreement, based on the outcome of Defendant's project review and design.

101.    Defendant knowingly made false statements about the true price of the Solar Roof and its installation and/or made false statements about the true price of the Solar Roof and installation costs.  Given the information asymmetry between Defendant and Plaintiff and the Class regarding the true costs of the Solar Roof, Defendant knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the falsity of Defendant's representations when signing their Solar Roof Purchase Agreement.

102.    Plaintiff and Class now seek damages, including statutory damages and attorney's fees, under Cal. Bus. & Prof. Code § 1760.

//

//

//

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Babak Malek, on behalf of himself and the Class, respectfully request that the Court enter an order:

A.   Certifying this case as a class action on behalf of the Class and TILA Subclass defined above, appointing Plaintiff Babak Malek as the representative of the Class and Subclass, and appointing his counsel as class counsel;

B.   An order enjoining Defendant from continuing the conduct and practices alleged above;

C.   An order awarding restitution and/or disgorgement;

D.   Equitable relief as appropriate;

E.   An award of costs, expenses, and attorneys' fees as permitted by law; and

F.   Such other or further relief as the Court may deem appropriate, just, and equitable.

## IX.   JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: July 20, 2021

**COTCHETT, PITRE & McCARTHY, LLP**

By:   _/s/ Justin T. Berger_
JUSTIN T. BERGER
SARVENAZ "NAZY" J. FAHIMI
KELSEY L. CAMPBELL

*Attorneys for Plaintiff*